IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| United States of America, | ) | Criminal No.: 4:12-cr-00057-RBH-1 |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Ramar Armon Gore. | ) | |
| | ) | |

This matter is before the Court following a hearing held on May 2, 2012, regarding Defendant Ramar Armon Gore's motion to suppress a firearm seized from his truck after he was arrested for driving without a license. The Court took the motion under advisement and, after considering the parties' arguments and the testimony of the witnesses, grants Gore's motion.

### Factual Background

On May 20, 2010, Captain Stan Strickland of the Horry County Police Department pulled into an automobile parts store to run a personal errand while on duty. After more than twenty-two years in law enforcement, Captain Strickland had achieved the status of precinct supervisor, commanding a division of almost eighty uniformed patrol officers. Because of his position, he no longer routinely patrolled the roads or made arrests. As he pulled into the store parking lot, he observed Gore park his truck near the store's entrance and enter the store without turning the engine off.[1] The store's manager, Timothy O'Shields, testified Gore was a recurring customer and had parked his truck in an area used by the store's delivery vehicles. There were no signs indicating any restriction of any kind that would prevent him from parking there. According to O'Shields, Gore came to the store to purchase some parts he had earlier called about.

Captain Strickland, when he entered the store, told Gore "that he needed to go take care of his

---

[1] Captain Strickland indicated that Gore had a dog in the truck.

vehicle." Gore complied and walked outside—presumably to turn his engine off.[2] Reentering the store, Gore muttered to O'Shields some words, which Captain Strickland testified he did not hear.

Captain Strickland asked Gore to repeat what he said; however, when Gore did not, Captain Strickland said, "[L]et's walk back out to your truck." At the hearing, Captain Strickland noted he was wearing his uniform at the time and that, while he would not have dragged Gore outside, he would have repeated his request.[3] Gore complied, and Captain Strickland proceeded to ask Gore for his driver's license. Gore's admission that he did not have one ultimately led to his arrest for driving without a license.

Two more officers joined Captain Strickland at the scene to assist him in the arrest. During an inventory search of Gore's truck conducted in accordance with departmental policy, a Derringer pistol was discovered in plain view on Gore's center console. The Government subsequently indicted Gore as a felon in possession of a firearm, and Gore's motion to suppress evidence of the pistol is now before the Court.

## **Discussion**

The issue here is whether, based on the totality of the circumstances, Captain Strickland was legally justified in ordering Gore outside of the store and then demanding to see his driver's license. Gore argues the command was effectively an investigatory detention, which required a reasonable suspicion, based on articulable facts, that criminal activity was afoot. *See Terry v. Ohio*, 392 U.S. 1, 20-30 (1968). He contends Captain Strickland's testimony presents no evidence to support a reasonable suspicion Gore was doing anything illegal. The Court agrees.

---

[2] In fact, when Captain Strickland subsequently went outside with Gore, the truck's engine was turned off, although the truck was parked in the same place.
[3] At one point, Captain Strickland conceded that he "pulled" Gore from the store.

2

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer['s] requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). Upon a finding that a seizure had occurred, an "officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity" to justify the "brief, investigatory stop." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (internal quotation marks omitted) (citing *Terry*, 392 U.S. at 27).

Given the circumstances surrounding Captain Strickland's request that Gore to go outside with him, the Court finds Gore was seized, as a reasonable person would not feel free to decline Captain Strickland's request. Captain Strickland's authority, coupled with his repeated demands, shows Gore was in no position to terminate the encounter. The question then becomes whether Captain Strickland's command was justified.

Critical to the analysis is Captain Strickland's belief Gore was in violation of a statute outlawing the parking of an unattended vehicle. *See* S.C. Code Ann. § 56-5-2570 (2006). Adopted as part of the Uniform Act Regulating Traffic on the Highways, the statute prohibits a "person driving or in charge of a motor vehicle [from] permit[ting] it to stand unattended without first stopping the engine, locking the ignition, removing and effectively setting the brake thereon and, when standing upon any grade, turning the wheels to the curb or side of the highway." *Id.*; *see also Roberts v. Campbell*, 157 S.E.2d 867, 868 (S.C. 1967).

*Roberts*, a 1967 opinion from the South Carolina Supreme Court, is one of the few published opinions interpreting section 56-5-2570 and confirms that the statute regards unattended vehicles on *highways*, not parked in privately-owned parking lots. *Roberts*, 157 S.E.2d at 868. Although *Roberts* is a case regarding whether a duty in tort arises from the statute, the Court finds the opinion informative in the criminal context. Indeed, the South Carolina Supreme Court reasoned the "very language" of the statute "demonstrates that it was intended to apply only to vehicles on highways as defined by the Act." *Id.* Moreover, the context in which the South Carolina Supreme Court interpreted the statute included a corresponding statute providing that "[t]he provision[s] of th[e] chapter relating to the operation of vehicles refer *exclusively to the operation of vehicles upon highways*." S.C. Code Ann. § 56-5-20 (2006) (emphasis added); *Roberts*, 157 S.E.2d at 868.

The evidence presented at the hearing shows Gore's truck was parked in a privately-owned parking lot. The Court, therefore, cannot find a basis for a reasonable suspicion to order Gore from the store and demand identification. Captain Strickland's admission that his reasonable suspicion was founded on his misunderstanding of section 56-5-2570 renders his suspicion objectively unreasonable. *See, e.g.*, *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003) ("[A] mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop.").[4] Furthermore, the fact Gore was acting "unusual," without more, falls short of adequate circumstances

---

[4] The Fourth Circuit has not directly decided whether a *Terry* stop conducted pursuant to a mistake of law violates the Fourth Amendment. *See United States v. McHugh*, 349 F. App'x 824, 828 n.3 (4th Cir. 2009). However, in *McHugh*, the Fourth Circuit *assumed*, "without deciding, that an officer's reasonable mistake of law may not provide the objective grounds for reasonable suspicion to justify a traffic stop." *Id.* Considering the Fourth Circuit's reliance on *Chanthasouxat*'s proposition that "an officer's reasonable mistake of fact may provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop, but an officer's mistake of law may not"; this Court finds *Chanthasouxat* and the assumption in *McHugh* persuasive. *See United States v. Arias*, 213 F. App'x 230, 232 (4th Cir. 2007); *United States v. Williams* 85 F. App'x 341, 347 (4th Cir. 2004).

to justify an investigatory detention.[5]

The Government raises the good-faith exception because Captain Strickland acted on his good-faith understanding of the law. However, the basis for the good-faith exception finds its strength where the deterrent effect of the exclusionary rule is weak or nonexistent. *See Herring v. United States*, 555 U.S. 135, 144 (2009). A *misunderstanding* of an established traffic law by a law enforcement officer is distinguishable from an officer's reliance on binding precedent subsequently overturned. *Cf. Davis v. United States*, 131 S.Ct. 2419, 2434 (2011) (holding that "when the police conduct a search in objectively reasonable reliance on binding appellant precedent, the exclusionary rule does not apply"). Consistent with *Davis*, the deterrent effect of the exclusionary rule ensures that officers have an understanding of *existing* law when investigating criminal activity. *See Chanthasouxat*, 342 F.3d at 1280 (holding that the good-faith exception to the exclusionary rule "should not be extended to excuse a vehicular search based on an officer's mistake of law").

Moreover, the Government, other than raising the exception and arguing Captain Strickland's mistake was in good faith, presented no argument at the hearing about why the exception was applicable here. The Court gave both the Government and Gore the opportunity to submit memoranda to supplement their arguments at the hearing. Both parties, however, declined to do so.

The Court, therefore, finds the good-faith exception inapplicable. Gore was not in violation of any motor vehicle law, including section 56-5-2570, or any parking ordinance or statute, and he had simply parked his truck and left it running in the private parking lot of a store where he was

---

[5] The Court notes Captain Strickland's testimony that Gore was acting "unusual" was in response to the Government's question about whether Gore was "behaving suspiciously." The Court is mindful of "post hoc rationalizations to validate those seizures that turn up contraband" when assessing the credibility of witnesses, especially here, where O'Shields's testimony showed Gore's behavior was consistent with his usual customers. *United States v. Foster*, 634 F.3d 243, 249 (4th Cir. 2011).

known as a regular customer. Certainly, his muttering was not unlawful. Considering the totality of the circumstances, no evidence supports a reasonable suspicion or probable cause. Because Captain Strickland lacked a reasonable suspicion to order Gore outside of the store and then demand that he present his identification, the pistol found as a direct result of the request must be suppressed as fruit of the improper *Terry* detention.

## Conclusion

For the foregoing reasons, Gore's motion to suppress is **GRANTED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

May 9, 2012
Florence, SC